UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOANN FISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:23-cv-55-MTS |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of the Defendant, the Commissioner of Social Security, denying the application of JoAnn Fisher ("Plaintiff") for Disability Insurance Benefits ("DIB").[2] On November 12, 2013, Plaintiff applied for DIB benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 ("the Act"). (Tr. 355). In February 2013, Plaintiff alleged disability. (Tr. 355-56). On April 11, 2016, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (Tr. 239). This Court then remanded the case back to the ALJ,[3] (Tr. 1630-42), who then found that, although Plaintiff suffered from severe impairments including inflammatory bowel disease, urinary urgency and incontinence, and left knee osteoarthritis, Plaintiff was capable of performing past relevant work and was not disabled. (Tr. 1467-83). For the following reasons, the Court affirms.

---

[1] Martin O'Malley is now the Commissioner of SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, O'Malley is substituted as the proper defendant.

[2] Section 405(g) provides for judicial review of the SSA Commissioner's "final decision." 42 U.S.C. § 405(g). After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 224-44), the Appeals Council denied Plaintiff's request for review, (Tr. 1-14). However, this Court then issued a Memorandum and Order remanding the case back to the ALJ. (Tr. 1630-42). On remand, the ALJ found Plaintiff has severe impairments but could perform past relevant work, (Tr. 1464-1618), and therefore, was not disabled. (Tr. 1483). Now, review of the decision is appropriate under 28 U.S.C. § 405(g).

[3] This Court remanded the decision to the ALJ to "consider whether the urgency (not just the frequency) of the [Plaintiff's] incontinence resulted in any additional limitations which should have been included in the residual functional capacity ("RFC") finding." (Tr. 1467).

I.      **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* §§ 404.1520(a)-(d).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* § 416.920(e).  At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545.  The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with

the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

3

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability, February 22, 2013 through September 30, 2018 ("the relevant period"). (Tr. 1470). At Step 2, the ALJ found Plaintiff had severe impairments of inflammatory bowel disease, urinary urgency and incontinence, and osteoarthritis of the left knee. (Tr. 1470).

At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment because Plaintiff reported the ability to pay bills, and handle a checkbook, get along with authority figures, read, sew and pay attention for up to three hours, and drive and shop alone, among other activities. (Tr. 1471). All of these findings allowed the ALJ to conclude "Plaintiff's alleged depression caused no more than 'mild' limitation" with only a minimal limitation on her ability to perform basic work activities. (Tr. 1472). Thus, the ALJ found Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the exception of climbing ladders, ropes or scaffolds, but she may occasionally climb ramps and stairs and operate foot controls with her bilateral lower extremities and frequently reach overhead with her right upper extremity, as limitations. (Tr. 1472). Additionally, Plaintiff cannot work in excess of 300 feet from an accessible bathroom and should have the option to take regularly scheduled work breaks at her own discretion. (Tr. 1472). At Step 4, the ALJ found Plaintiff could return to her past relevant work as a bookkeeper.[4] (Tr. 1482). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 1483).

---

[4] A "bookkeeper" is classified as a "sedentary" job, defined in part as a job where "walking and standing are required occasionally." 20 C.F.R. § 404.1567(a).

### III. Discussion

The specific issues in this case are (1) whether substantial evidence supports the RFC; (2) whether the ALJ properly evaluated Plaintiff's subjective complaints; (3) whether Plaintiff has proven a step 2 error; and (4) whether substantial evidence supports that Plaintiff could perform her past relevant work.

1. ***Substantial Evidence Supports the RFC***

Plaintiff argues that the RFC assessment is not supported by substantial evidence because it relies on the opinion of a "State agency" doctor, Dr. Eduardo Ulloa, M.D., who was only able to review the medical evidence up to and until January 2014. Doc. [17] at 6-7. In addition to the allegedly incomplete medical evaluation, Plaintiff also argues that the RFC assessment is insufficient because the ALJ inserted its own opinion on Plaintiff's limitations instead of relying on the objective medical evidence, and the decision does not provide an explanation of the evidence supporting some of its findings, including how Plaintiff is capable of resuming work as a bookkeeper. *Id.* at 5,7.

RFC is defined as the most a Plaintiff can do despite her limitations, including both physical and mental limitations. 20 C.F.R. § 404.1545(a). It is the ALJ's "responsibility" to determine Plaintiff's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [Plaintiff's] own description of her limitations." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Moreover, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, the RFC is not required to be supported by a specific medical opinion. *Id.*

5

Here, a plain reading of the ALJ's second decision shows that the ALJ considered the objective medical evidence throughout the relevant period, accounted for the opinion of several medical doctors—although varying the weight applied to each—including, but not limited to the opinion of Dr. Eduardo Ulloa, M.D., and evaluated evidence in relation to the overall finding that Plaintiff could return to work as a bookkeeper. (Tr. 1472-81). In determining that Plaintiff is capable of performing bookkeeping duties, the ALJ considered Plaintiff's mental and physical status. Specifically, the ALJ afforded significant weight to the 2016 opinion of Vivian Knipp, Ph.D., who determined that Plaintiff's mental status examination was normal; she could perform a variety of mental exercises; and she only had a mild limitation in the ability to follow complex instructions. (Tr. 1459-60, 1478). The ALJ also considered Plaintiff's ability to tolerate a long car ride to Chicago; her ability to walk "1-3 miles daily;" and her normal gait. (Tr. 1479-80). The medical evaluations of James W. Morgan, Ph.D.—finding Plaintiff had no more than mild limitations in the ability to understand, remember or apply information—and Dionysios Veronikis, M.D.—finding that treatment would help Plaintiff's incontinence—were also reviewed. (Tr. 1480).

The ALJ also considered the opinion of Eduardo Ulloa, M.D., who noted that Plaintiff is capable of sitting, with normal breaks, for "about 6 hours in an 8-hour workday," and standing or walking, with normal breaks for 2 hours. (Tr. 291). Dr. Ulloa also considered Plaintiff's allegation that she could not stand, walk, or sit, among other limitations, and determined these claims to be only "partially credible;" however, after reviewing these alleged limitations, Dr. Ulloa found that Plaintiff indeed had "[l]ight RFC with stand/walk and postural limitations," but considered the other limitations listed, including the believed limitation to sit, "not severe." (Tr. 292). The ALJ properly considered Dr. Ulloa's medical evidence, but the ALJ only afforded Dr. Ulloa's opinion

6

"minimal weight" because Plaintiff's pain complaints, incontinence, and the aggravating factor of obesity limited her to a restricted range of sedentary work—as opposed to Dr. Ulloa's light work recommendation—during the relevant period. (Tr. 1480).

Although not specifically referenced, the ALJ also considered the medical evaluation of Dr. Kyra Cass, dated October 16, 2018, stating that Plaintiff's gait was "normal" with normal movement. (Tr. 2045). The ALJ also determined that Plaintiff's own report of "prolonged sitting" was not indicative of a physical impairment that would prevent her from performing a restricted range of sedentary work activity. (Tr. 1479, 1988, 2045). The same can be said for the ALJ's decision to grant discretionary breaks when performing work. Here, the ALJ considered and afforded some weight to Dr. Veronikis's medical evaluation finding Plaintiff's incontinence and urgency were severe enough to warrant limitations in the RFC, but the severity itself was not supported by the medical evidence. (Tr. 1480-81); *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (explaining that "the ALJ is free to accept some, but not all, of a medical opinion"). This contradictory medical evidence, relied on by the ALJ, included notes from Dr. Veronikis in 2015, stating Plaintiff's stress urinary incontinence was "moderate." (Tr. 1444). Further, Dr. Cass's evaluations from 2015 through 2018 found "moderate genuine stress urinary incontinence," and that the incontinence was "well controlled on dual Vesicare and Myrbetriq." (Tr. 1476-80; 2023, 2040); *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Thus, the ALJ properly considered both the medical and non-medical evidence, and substantial evidence supports the ALJ's RFC assessment.

2. ***The ALJ Properly Evaluated Plaintiff's Subjective Complaints***

Next, Plaintiff argues that the ALJ failed to adequately discredit Plaintiff's testimony as it relates to certain pains felt including lumbar spine degeneration, cervical spine degeneration and stenosis, hand pain and numbness, shoulder and knee pain, right foot pain, and chronic abdominal pain. Doc. [17] at 14. It is also Plaintiff's position that the ALJ improperly considered the *Polaski* factors as they relate to Plaintiff's subjective complaints. The *Polaski* factors include the consideration of objective medical evidence, the Plaintiff's work history, and other evidence relating to (1) the Plaintiff's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the Plaintiff's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (referencing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

When rejecting a plaintiff's complaints of pain, the ALJ must make an "express credibility determination detailing his reasons for discrediting the testimony." *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991) (citing *Ricketts v. Sec'y of H.H.S.*, 902 F.2d 661, 664 (8th Cir. 1990)). In addition, the ALJ must set forth the inconsistencies and discuss the *Polaski* factors. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998). However, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to the decision. *See Adair v. Berryhill*, 2017 WL 365432, at *6 (E.D. Mo. Jan. 25, 2017) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

Here, the ALJ indirectly examined the *Polaski* factors in issuing her decision. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). A plain reading of the

decision shows that the ALJ considered medication and non-medication treatment, as well as aggravating factors, medical opinions, treatment notes, location/frequency/intensity of the pain, and her subjective reports of symptoms.

First, the ALJ properly considered both Plaintiff's work history and daily activities. More specifically, the ALJ provided a seemingly chronological depiction of Plaintiff's activity from the relevant period, February 2013 to September 2018, including, but not limited to sewing, reading, swimming, walking, traveling, and performing other activities around the house. (Tr. 1471-79). Also included within these activities were Plaintiff's ability to pay bills, balance a checkbook, count change, and handle a savings account. (Tr. 1471). The ALJ determined that these activities were indicative of nothing more than a mild limitation on Plaintiff's ability to apply information while performing sedentary work. (Tr. 1471). True, the Eighth Circuit has stated that the ability to complete activities such as "light housework and visiting with friends" provides "little or no support" in determining whether Plaintiff may perform work, *see Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995); however, the activities admitted here—walking one to three miles, enduring a long car ride to Chicago, getting stuff done around the house, and participating in other physical activity such as swimming and walking the dog—goes beyond limited daily activities. *See Adair*, 2017 WL 365432, at *7; *see also Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (finding that activities including doing laundry, preparing meals, attending church, and visiting friends, supported an ALJ's decision to discredit a plaintiff's complaints of pain).

Second, the ALJ also considered, and properly discredited, Plaintiff's pain complaints based on objective medical evidence. Plaintiff testified that she was "unable to work" because of "bowel and urinary incontinence with urgency." (Tr. 1473). Here, the ALJ properly considered Plaintiff's urgency and aggravating factors of her urinary incontinence, including how water

9

aggravated the urgency. (Tr. 1481). However, contrary to Plaintiff's complaints, the frequency of her urinary incontinence and stress urinary incontinence was "moderate," and her nocturia had improved. (Tr. 691, 1473, 1477). The ALJ also properly discredited Plaintiff's testimony because the objective medical evidence detailed that the medications administered, Vesicare and Myrbetriq, were in fact effective in controlling her incontinence, (Tr. 1480, 2023); *Wildman*, 596 F.3d at 965.

The same is true for Plaintiff's remaining complaints. Plaintiff complained of and was diagnosed with spinal stenosis in 2017, but the objective medical evidence showed inconsistencies with Plaintiff's complaint. Plaintiff retained full range of motion in her spine and experienced no tenderness; she received sacroiliac injections shortly after the stenosis diagnosis; and she also communicated improvement in her neck pain. (Tr. 1479-80, 2028, 2180). Plaintiff also complained of knee pain. However, Plaintiff had her left knee surgically repaired without complication, was ambulating without an assistive device, reported improvements despite some return of pain, and was referred to physical therapy and prescribed naproxen for the pain. (Tr. 1475-76, 1478, 1975). Additionally, and inconsistent with complaints of knee pain, Plaintiff also claimed to be walking "1-3 miles" and "20 miles the previous weekend" despite a cyst and chondrosis on her foot. (Tr. 1477, 1480, 2041). Demonstrating further inconsistency with Plaintiff's complaints of hand pain, numbness, and shoulder stiffness, the ALJ noted that Plaintiff denied numbness or tingling in her upper extremities in 2017, had only minimal spurring on her shoulder despite degenerative change, and also stated that the tingling on her right arm had resolved. (Tr. 1476, 1479, 2032). On top of this, the ALJ noted that Plaintiff reported herself to be "doing well" following carpal tunnel release surgery with only some residual numbness in her fingertips. (Tr. 2007).

Plaintiff has presented additional complaints, but "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). For these reasons, the ALJ properly discredited Plaintiff's subjective complaints. *See Schwandt*, 926 F.3d at 1012. Therefore, the ALJ's credibility analysis, which is primarily for the ALJ to decide and not the Court, is supported by substantial evidence. *See Bryant v. Colvin*, 861 F.3d 779, 782-83 (8th Cir. 2017) (explaining the court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence); *see also Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) ("ALJ is in the best position to determine the credibility").

    3. ***Any Step Two Error by the ALJ is Harmless***

Plaintiff next argues that the ALJ improperly evaluated impairments felt by Plaintiff including her carpal tunnel syndrome, frozen shoulder, and cervical spine impairments. Doc. [17] at 8-10. Plaintiff contends that the ALJ's conclusion that Plaintiff's neck and shoulder pain were not adequate, in conjunction with the ALJ's finding that Plaintiff's carpal tunnel syndrome was not severe, is not supported by the record. *Id.* at 10. At step 2 of the evaluation process, the ALJ must determine if a claimant suffers from a medically determinable impairment or combination of impairments that is severe. *See Rouse v. Berryhill*, 4:17-cv-2511-DDN, 2019 WL 1359384, at *5 (E.D. Mo. Mar. 26, 2019) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Plaintiff bears the burden of establishing that her impairments are severe, and although this

11

"is not an onerous requirement for the [plaintiff] to meet . . . it is also not a toothless standard." *Id.* at 707-08.

At step 2, the ALJ properly determined that Plaintiff suffered from at least three severe impairments, including inflammatory bowel disease, urinary urgency and incontinence, and osteoarthritis of the left knee. (Tr. 1470). The ALJ also considered other potential impairments, but there is substantial evidence that these impairments were not severe. First, the ALJ properly considered both the Plaintiff's hand and carpal tunnel syndrome issues. In her decision, the ALJ accepted Charles A. Goldfarb's medical opinion, from April 2016, that the Plaintiff's hand injury improved following carpal tunnel surgery in 2015. (Tr. 2140); (Tr. 1473). This medical evidence clarified that "[Plaintiff] is 6 weeks post bilateral carpal tunnel release" and was "[d]oing great," with "[n]o complaints" and was "better and improving." (Tr. 2140).

The same consideration was displayed regarding Plaintiff's alleged shoulder impairment. True, in her final decision, the ALJ specifically noted that Plaintiff was diagnosed with adhesive capsulitis of the left shoulder, but the ALJ also noted that Plaintiff's shoulder impairment was expected to be resolved within twelve months. (Tr. 1470, 1476). Furthermore, the ALJ considered Dr. Knipp's 2015 evaluation that noted Plaintiff's shoulder demonstrated degenerative change with only minimal spurring, as well as Dr. Cass's notation from September 2015 stating that Plaintiff's left shoulder had "restricted active and passive ROM" but found no trigger points or tender points. (Tr. 902, 964).

Finally, Plaintiff argues the ALJ failed to evaluate Plaintiff's neck pain; however, to the contrary, the ALJ determination referenced medical evidence regarding both Plaintiff's spinal condition and neck pain. (Tr. 1479-80). As pointed out, Plaintiff retained full range of motion in her spine and experienced no tenderness; she received sacroiliac injections shortly after the

12

stenosis diagnosis; and she also communicated improvement in her neck pain. (Tr. 1479-80, 2028, 2180). Plaintiff presents evidence supporting a finding contrary to that of the ALJ, but these arguments, and alternative theories of the evidence, are not sufficient for remand. *See Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014))).

Here, the ALJ properly considered Plaintiff's alleged hand, wrist, neck, and spine impairments, in addition to Plaintiff's other alleged impairments. Moreover, as discussed, the ALJ properly considered all relevant evidence in determining Plaintiff's RFC. Therefore, any potential step 2 error is harmless. *See Spainhour v. Astrue*, 11-1056-SSA-cv-w-MJW, 2012 WL 5362232, *3 (W.D. Mo. Oct. 30, 2012) (finding that "even if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and [non-severe] in determining plaintiff's RFC."); *see also Jones v. Kijakazi*, 4:23-cv-24-SRW, 2024 WL 324079, at *8 (E.D. Mo. Jan. 29, 2024) ("Even though the ALJ may not have labeled [p]laintiff's [pain] as a severe impairment, the decision reflects the ALJ's consideration of [p]laintiff's [pain] and evidences [that] the RFC would not have changed even if the diagnosis was included as a severe impairment.").

4. ***Substantial Evidence Supports Plaintiff's Ability to Perform Past Relevant Work***

Finally, Plaintiff argues that the vocational expert testimony "fails to support the conclusion that plaintiff could return to her past work." Doc. [17] at 16. A determination that the Plaintiff has the functional capacity to return to past work "must be developed and explained fully in the disability decision." S.S.R. No. 82-62, 1982 WL 31386, *3. "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial

13

evidence that the claimant is able to return to his [or her] past work." *See Sells v. Shalala*, 48 F.3d 1044, 1046 (8th Cir. 1995) (quoting *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)).

Here, substantial evidence supports the finding that Plaintiff has the RFC to perform past relevant work. The Dictionary of Occupational Titles ("DOT") provides the relevant skills necessary to serve as a "bookkeeper," and the ALJ found that this work, ordinarily performed at the sedentary level, was within Plaintiff's RFC during the relevant period. (Tr. 1482). As such, the ALJ concluded that the Plaintiff "was able to return to this work as it was generally performed in the national economy." (Tr. 1482). In reaching her decision, the ALJ relied, in part, on the testimony of vocational expert ("VE"), John Dolan M.A., who reviewed Plaintiff's work history prior to testifying. (Tr. 1597). The VE testified that Plaintiff had transferrable skills to jobs at the sedentary and light levels, including to other types of bookkeeping jobs in the national economy. (Tr. 1614). The VE also testified that, based on his forty-eight years of experience "helping people with various kinds of disabilities[] find jobs," so long as a long-term or even a new employee, was "getting her work done," extra breaks, in addition to ordinary breaks, probably "would be tolerated." (Tr. 1614). In other words, the VE provided evidence that offering this particular accommodation is prevalent, and "an ALJ may rely on VE testimony about common workplace practices based upon the expert's knowledge and experience." S*ee Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 796 (8th Cir. 2018); *see also* (Tr. 1598) ("In the offices that I have supervised, people could go to the bathroom whenever they wanted."). Thus, the VE's answers and overall attestations supplied substantial evidence to support a determination that Plaintiff could perform her past relevant work. *Schwandt*, 926 F.3d at 1013.

In addition to the VE testimony, the ALJ also properly considered Plaintiff's Work History Report, as well as her mental and medical evaluations, as discussed in Part I of this Opinion. (Tr.

1482). Specifically, the ALJ determined that, in line with medical examinations, Plaintiff's urinary issue is "not noted to be of significance," and in fact, has been controlled with Vesicare and Myrbetriq. (Tr. 1479, 1482). Plaintiff's mental status examinations were also "routinely normal throughout the record." (Tr. 1482). What is more, Plaintiff's own testimony clarified that she was "generally able to complete her work as a bookkeeper." (Tr. 1482). Thus, the substantial evidence on the record as a whole supports the determination that Plaintiff is able to perform her past relevant work.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

Dated this 29th of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE